**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAZEL COADS; STEPHANIE M. CHASE; MARVIN AMAZAN; SUSAN E. COOLS; SUZANNE A. FREIER; CARL R. GERRATO; ESTHER HERNANDEZ-KRAMER; JOHN HEWLETT JARVIS; SANJEEV KUMAR JINDAL; HERMIONE MIMI PIERRE JOHNSON; NEERAJ KUMAR; KAREN M. MONTALBANO; EILEEN M. NAPOLITANO; OLENA NICKS; DEBORAH M. PASTERNAK; CARMEN J. PINEYRO; DANNY S. QIAO; LAURIE SCOTT; RAJA KANWAR SINGH; MARY G. VOLOSEVICH; and the NASSAU COUNTY DEMOCRATIC COUNTY COMMITTEE, | Civil Action No. |
| Plaintiffs, | |
| v. | |
| NASSAU COUNTY; the NASSAU COUNTY LEGISLATURE; the NASSAU COUNTY BOARD OF ELECTIONS; JOSEPH J. KEARNY, in his official capacity as a commissioner of the Nassau County Board of Elections; and JAMES P. SCHEUERMAN, in his official capacity as a commissioner of the Nassau County Board of Elections, | |
| Defendants. | |

## NOTICE OF REMOVAL

Defendants Nassau County and the Nassau County Legislature ("Defendants") hereby remove this civil action, with reservation of all rights and defenses, from the Supreme Court of the State of New York, County of Nassau, Index No. 611872/2023 , to the United States District Court of the Eastern District of New York, pursuant to 28 U.S.C. §§ 1441, 1446, and 1331.

As addressed below, this Court has jurisdiction over this matter because a federal question exists. *See* 28 U.S.C. § 1331. In support of removal, Defendants state as follows:

## I. INTRODUCTION AND FACTUAL BACKGROUND

1. This action is a civil action within the meaning of the Acts of Congress relating to the removal of cases.

2. This action was initiated on or about July 26, 2023 by the filing of a complaint in the Supreme Court of New York, Nassau County (the "*Coads* Action"). On or about February 7, 2024, a related action captioned as *New York Communities for Change, et al. v. County of Nassau, et al.*, Index No. 602316/2024 was similarly initiated in the Supreme Court of New York, Nassau County (the "*N.Y. Communities for Change* Action," and together with the *Coads* Action, the "State Court Actions"). The State Court Actions were consolidated for discovery and trial by order of the Honorable Paul I. Marx, J.S.C.

3. Counsel for Plaintiffs in the *Coads* Action stated, with respect to the possibility of removal of these cases to this Court, that the claims and theories asserted in the *N.Y. Communities for Change* Action are "implicated" in the *Coads* Action, such that both cases "implicate[] the federal standard" of Section 2 of the Voting Rights Act, as discussed further *infra*. *See* Dec. 20, 2024 Tr. at 682:25–683:12 (**Exhibit N**).

4. The State Court Actions allege that the redistricting map for Nassau County's 19 legislative districts that the Nassau County Legislature enacted on February 28, 2023 violates Section 34 of the New York Municipal Home Rule Law and the John R. Lewis Voting Rights Act of New York (the "NYVRA"), N.Y. Elec. L. § 17-200, *et seq.*

5. As further set forth below, the State Court Actions are properly removed to this Court because this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Further,

2

Defendants have satisfied the procedural requirements for removal pursuant to 28 U.S.C. §§ 1441 and 1446.

6.      As required by 28 U.S.C. § 1446(a), a true and correct copy of the complaint and any other pleadings, process, or orders served on Defendants in the *Coads* Action are attached hereto as **Exhibits A** through **M**.

7.      This Court has original subject matter jurisdiction over the State Court Actions under 28 U.S.C. § 1441(b) and (c), and removal of the State Court Actions is proper even when removable claims are joined with non-removable claims.

## II.     FEDERAL QUESTION JURISDICTION EXISTS

8.      Although the State Court Actions as pleaded did not present any federal question, the court below has very recently entered oral orders permitting Plaintiffs to inject a very significant federal issue into this case—namely, whether Plaintiffs can satisfy the standards of Section 2 of the *federal* Voting Rights Act, 52 U.S.C. § 10301.  The existence of this new and substantial federal issue renders the State Court Actions removable. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see* 28 U.S.C. § 1331; *id.* § 1441; *id.* § 1446(b)(3).

9.      Section 2 of the federal Voting Rights Act contains numerous "exacting requirements" and safeguards that a plaintiff must satisfy to prove vote dilution. *Allen v. Milligan*, 599 U.S. 1, 30 (2023).  In particular, *Thornburg v. Gingles*, 478 U.S. 30 (1986), provided a two-step "framework" for adjudicating Section 2 vote-dilution claims. *Id.* at 50–51; *Wis. Legislature v. Wis. Elections Comm'n*, 595 U.S. 398, 402 (2022); *see Bartlett v Strickland*, 556 U.S. 1, 21 (2009) (plurality opinion).

10. The first *Gingles* step requires a Section 2 plaintiff to establish three "necessary preconditions." *Gingles*, 478 U.S. at 50. First, "[t]he minority group must be sufficiently large and compact to constitute a majority in a reasonably configured district." *Wis. Legislature*, 595 U.S. at 402. A plaintiff cannot meet this precondition by showing that it is possible to create an "influence district[ ]" where "minority voters may not be able to elect a candidate of choice but can play a substantial, if not decisive, role in the electoral process." *League of United Latin Am. Citizens v. Perry (LULAC),* 548 U.S. 399, 446 (2006) (plurality opinion) (citation omitted). As discussed further below, the *en banc* Fifth Circuit has also recently held that Section 2 does not permit lumping minority groups together in a so-called "coalition district." *See Petteway v. Galveston County*, 111 F.4th 596, 599 (5th Cir. 2024) (en banc). Second, "the minority group must be politically cohesive." *Wis. Legislature*, 595 U.S. at 402. And third, "a majority group must vote sufficiently as a bloc to enable it to usually defeat the minority group's preferred candidate." *Id.*

11. If a plaintiff satisfies this first step, the second *Gingles* step—which is a mandatory inquiry—"considers the totality of circumstances to determine 'whether the political process is equally open to minority voters.'" *Wis. Legislature*, 595 U.S. at 402 (quoting *Gingles*, 478 U.S. at 79). Courts consider the political subdivision's "history of voting-related discrimination," *Gingles,* 478 U.S. at 44, "recogniz[ing] that application of the *Gingles* factors is peculiarly dependent upon the facts of each case," *Allen*, 599 U.S. at 19 (citations omitted).

12. Recently, the Fifth Circuit held that Section 2 does not permit adding together minority groups together in a so-called "coalition district" to satisfy the *Gingles* preconditions. *Petteway*, 111 F.4th at 599. This decision deepened an existing circuit split on this issue, with the Fifth and Sixth Circuits ruling that Section 2 does not authorize minority coalition vote-dilution

4

claims, *see id.*; *Nixon v. Kent County*, 76 F.3d 1381, 1387 (6th Cir. 1996) (en banc), and the Eleventh Circuit holding the opposite, *see Concerned Citizens of Hardee Cnty. v. Hardee Cnty. Bd. of Comm'rs*, 906 F.2d 524, 526 (11th Cir. 1990).  Other circuits, including the Second Circuit, have considered minority coalition vote-dilution claims without resolving the issue of whether such claims are permissible under Section 2 of the Voting Rights Act, such that this remains an open issue of federal law in these circuits.  *See Petteway*, 111 F.4th at 603 (noting that "the Second, Seventh, and Ninth Circuits have resolved cases involving minority coalitions without discussing or deciding whether coalition claims are permissible," and citing cases).

13.     The NYVRA, by contrast, does not contain Section 2's standards and safeguards— and, indeed, explicitly disclaims several of those standards.  The statute disclaims the first *Gingles* precondition, stating that "evidence concerning whether members of a protected class are geographically compact or concentrated shall not be considered [for liability]." N.Y. Elec. L. § 17-206(c)(viii).  It further authorizes the "combin[ing]" of minority groups into coalition districts, *id.* § 17-206(2)(c)(iv), contrary to the approach that the Fifth and Sixth Circuits have taken as to Section 2 of the federal Voting Rights Act.  With respect to the second *Gingles* precondition, the NYVRA does not require a "politically cohesive" minority group, *Wis. Legislature*, 595 U.S. at 402, and instead capaciously defines "racially polariz[ed]" to mean "voting in which there is a divergence in the . . . choice[s] of members in a protected class from the . . . choice[s] of the rest of the electorate," N.Y. Elec. L. § 17-204(6).  And with respect to the third *Gingles* precondition, the NYVRA does not require that the "white majority votes sufficiently as a bloc to enable it . . . to defeat the minority group's preferred candidate," such that a "challenged districting [map] thwarts a distinctive minority vote *at least plausibly on account of race*." *Allen*, 599 U.S. at 18–19 (citations omitted; ellipses in original; emphasis added).  Nor does the NYVRA even require

5

vote-dilution plaintiffs to satisfy *Gingles*' mandatory second step, pursuant to which a court must "consider[ ] the totality of circumstances to determine whether the political process is equally open to minority voters." *Wis. Legislature*, 595 U.S. at 402 (citations omitted).

14.     Plaintiffs in the State Court Actions first raised the possibility of a substantial federal question being part of their claims in their combined opposition to Defendants' Motion for Summary Judgment.  Specifically, Plaintiffs argued that they had "adduced evidence to make out a [federal Voting Rights Act] Section 2 claim" by satisfying the *Gingles* preconditions with respect to their vote-dilution claims.  Pls.' MSJ Opp. Br. at 26 (**Exhibit O**).

15.     As Defendants explained in their Reply in Further Support of Their Motion for Summary Judgment, Plaintiffs raised this Section 2 issue far too late, such that this federal theory was not part of this case.  Defs.' MSJ Reply Br. at 11–12 (**Exhibit P**).  As Defendants explained, "Plaintiffs' reliance upon a new *Gingles*-based theory for the first time at the summary judgment stage" is too late.  *Id.* at 11 (citing *Troia v. City of New York*, 162 A.D.3d 1089, 1092 (2d Dep't 2018)).

16.     Nevertheless, Plaintiffs asserted this federal issue again in their opening statements at the commencement of the bench trial before the Honorable Paul I. Marx on December 17, 2024, asserting that Plaintiffs could prove their state-law vote-dilution claims by proving a violation of Section 2 of the *federal* Voting Rights Act.  Dec. 17, 2024 Tr. at 119:9–15 (**Exhibit Q**).

17.     Following Plaintiffs' opening statements, counsel for Defendants objected vehemently and repeatedly to Plaintiffs' untimely effort to inject a federal question into the State Court Actions.  Defendants stated on the record that had this theory been part of the State Court Actions, Defendants would have removed the case to federal court "as soon as it was filed."  *Id*. at 97:13–16.  Defendants thus requested that the Court enter an order making clear that Plaintiffs'

Section 2 theory—that is, their theory that they could establish vote-dilution under their state-law claims by proving a violation of Section 2 of the Voting Rights Act—was in fact not part of the case.  Dec. 20, 2024 Tr. at 676:6–10.

18.  In response, Plaintiffs' counsel articulated their theory of their claims as follows: they "could prove a violation of the Municipal Home Rule Law by proving that the standards for racial vote dilution that are incorporated into the Municipal Home Rule Law are met and those standards are the standards of Section 2 of the Voting Rights Act as well as the New York Voting Rights Act."  Dec. 17, 2024 Tr. at 119:9–15.  Although Plaintiffs had in their prior opposition briefing suggested that their NYVRA claim satisfied *Gingles* (prompting Defendants to explain that the Section 2 standards were not properly part of this case), *see supra* p.6, during opening arguments, Plaintiffs' counsel asserted that their claim under Section 34 of the Municipal Home Rule Law incorporated the standards of Section 2 of the federal Voting Rights Act, *see* Dec. 17, 2024 Tr. at 119:9–15.  Regardless, to the extent either the NYVRA or the Municipal Home Rule Law (or both) incorporate Section 2, removal is proper for the reasons explained below.  *See infra* pp.8–12.

19.  The court then entered an oral order allowing Plaintiffs to bring this federal theory as part of this case.  To eliminate "a potential claim of prejudice," the court allowed Defendants to submit supplemental expert reports that perform a *Gingles* analysis under Section 2 of the federal Voting Rights Act, Dec. 17, 2024 Tr. at 141:8–25, and gave the parties the "opportunity to brief the issue of the propriety of aggregating the minorities" in an effort to resolve the existing circuit split on this question of federal law, discussed *supra*, *id.* at 141:16–24.  The court also acknowledged the significance of this federal question, noting that resolving Plaintiffs' federal

theory would require "a lowly Supreme Court Judge . . . to tell the Circuits that they are wrong." *Id.* at 136:5–7.

20.     By request of Defendants, the court ordered on the record that, while Plaintiffs had not brought a standalone Section 2 claim under federal law, Plaintiffs would nonetheless be permitted to prove their state-law vote-dilution claims by meeting the standards of Section 2 of the federal Voting Rights Act. *See* Dec. 20, 2024 Tr. at 676:11–17, 677:10–15, 678:9–17, 679:9–18. Thus, a federal question was necessarily raised by Order of the Honorable Paul I. Marx, J.S.C., of the Supreme Court of New York, County of Westchester, sitting by designation, on December 20, 2024. *See id.*

21.     Counsel for the *Coads* Action Plaintiffs additionally stated that Plaintiffs' state-law claim "implicates the federal standard" under Section 2 of the Voting Rights Act "because New York chose to use some of the same language that the federal statutes use." *See* Dec. 20, 2024 Tr. at 682:25–683:12.

22.     Accordingly, while this case alleges only state-law claims, in light of the court's orders permitting Plaintiffs to raise their Section-2-based theory as to their state vote-dilution claims, the case now "implicate[s] significant federal issues" and is therefore removable pursuant to the substantial federal question doctrine. *Grable*, 545 U.S. at 312; *see Gunn v. Minton*, 568 U.S. 251, 258 (2013); *New York ex rel. Jacobson v. Wells Fargo National Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016). This doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable*, 545 U.S. at 312. It applies where, as here, a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *Jacobson*, 824 F.3d at 315.

23. *Necessarily Raised*. A federal issue is necessarily raised if the court must resolve a federal issue in adjudicating a state-law claim, *New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70, 78–79 (S.D.N.Y. 2022), or if the state-law claim "is affirmatively premised on a violation of federal law," *Jacobson*, 824 F.3d at 315 (citation omitted). Here, Plaintiffs on December 17, 2024 that they intended to "prove a violation of the Municipal Home Rule Law by proving that the standards for racial vote dilution that are incorporated into the Municipal Home Rule Law are met and those standards are the standards of Section 2 of the Voting Rights Act." Dec. 17, 2024 Tr. at 119:9–14. In other words, Plaintiffs now say that Section 34 of the Municipal Home Rule Law incorporates the standards of Section 2 of the federal Voting Rights Act, such that Plaintiffs intend to show that they can meet those federal standards to succeed on their state-law claim. *See Arm or Ally, LLC*, 644 F. Supp. 3d at 78–79 (removal was proper where state law incorporated a federal question). The court approved by oral order Plaintiffs' injection of this substantial federal question into their claims, allowing Defendants to submit supplemental expert reports addressing the federal *Gingles* standard and briefing to squarely address an extant circuit split necessary to deciding that new federal theory. *See* Dec. 17, 2024 Tr. at 141:8–25.

24. *Actually Disputed*. A federal issue is "actually disputed" "when the federal issue is the only or the central point in dispute." *Jacobson*, 824 F.3d at 316 (citations omitted). Here, the federal issue of whether the standards of Section 2 of the Voting Rights Act are met is central to Plaintiffs' new theory, given Plaintiffs' argument that they can "prove a violation of the Municipal Home Rule Law by proving that the standards for racial vote dilution that are incorporated into the Municipal Home Rule Law are met and those standards are the standards of Section 2 of the Voting

9

Rights Act." Dec. 17, 2024 Tr. at 119:9–14. Another of many other federal issues, such a finding will require resolution of a significant circuit split between the United States Courts of Appeals for the Fifth and Sixth Circuits, on the one hand, and the Eleventh Circuit, on the other hand, regarding whether Section 2 authorizes minority coalition vote-dilution claims like the ones in this case. *Supra* pp.4–5. The trial court ordered briefing on this issue, but at the same time specifically remarked that this substantial federal question would require "a lowly Supreme Court Judge . . . to tell the Circuits that they are wrong." Dec. 17, 2024 Tr. at 136:5–7. And so, there can be no serious dispute that, following the court's recent order, the question of whether Plaintiffs have satisfied the standards of Section 2 of the federal Voting Rights Act for purposes of proving their Municipal Home Rule Law claim is actually disputed.

25. *Substantial Federal Issue*. The federal issue must also be "substantial," which requires that the issue be important "to the federal system as a whole" and that the state-law claim "present a legal issue that implicates a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Jacobson*, 824 F.3d at 316. Here, the State Court Actions now require the court to not only interpret and apply Section 2 of the Voting Rights Act—a critical piece of federal voting rights legislation that is regularly interpreted by the federal courts—but also to resolve an existing circuit split on a significant question of federal law, namely, whether Section 2 of the federal Voting Rights Act permits minority coalition vote-dilution claims like the ones that Plaintiffs are attempting to bring here. *See supra* pp.4–5. This latter question, in particular, "implicates a serious federal interest in claiming the advantages thought to be inherent in a federal forum," *Jacobson*, 824 F.3d at 316 (citation omitted), given that this case could now allow the Second Circuit its first opportunity to squarely address the propriety of minority coalition vote-dilution claims under Section 2, *see Petteway*, 111 F.4th at 603. In incorporating the

10

standards of Section 2 into Section 34 of the Municipal Home Rule Law, the government "itself made a decision to incorporate [federal standards] into the relevant state law and, thus, took the risk that suits to enforce the law would be removed to federal court." *Arm or Ally, LLC*, 644 F. Supp. 3d at 82.

26.     *Federal-State Balance*. Finally, exercising federal jurisdiction over these Actions would not "upse[t] the state-federal law drawn (or at least assumed) by Congress" and would be "consistent with congressional judgment about the sound division of labor between state and federal courts governing [federal question jurisdiction]." *Grable*, 545 U.S. at 313–14. As explained immediately above, these Actions require the court to decide necessarily important issues of federal law under the Voting Rights Act, including choosing sides in an existing circuit split. The "traditional forum" for Section 2 claims is federal court, as such claims arise under federal law, and accepting removal jurisdiction here is unlikely to "affect[ ]" a significant "volume of cases," given the specific need in this case for the federal courts to address the circuit split identified in *Petteway*. *See Jacobson*, 824 F.3d at 316. Under these circumstances, the State Court Actions raise "federal questions that implicate substantial federal interests," and so are "appropriately resolved in federal rather than state court." *Id.*

27.     The State Court Actions could not have originally been filed in this District Court as the initiating pleadings do not state that Plaintiffs are pursuing a state-law theory that would require proof of the elements of a federal statute, Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. As an action of a civil nature now known to be founded on a claim or right arising under the laws of the United States, this action may be removed to this District Court pursuant to 28 U.S.C. § 1441(a) and 1446(b)(3).

### III.     REMOVAL IS PROCEDURALLY PROPER

28.     In addition to satisfying the requirements of substantial federal question jurisdiction, Defendants have satisfied all other requirements for removal.

29.     Venue in this District is proper under 28 U.S.C. § 1441(a) because the United States District Court of the Eastern District of New York is the federal judicial district corresponding to the place where the State Court Actions are pending.

30.     This Notice of Removal satisfies the requirements of Section 1446(b) because Defendants have filed this Notice of Removal "within thirty days after receipt" of the "order . . . from which it may first be ascertained that the case is one which is or has become removable," 28 U.S.C. § 1446(b)(3)—namely, the court's December 17 and 20, 2024 oral orders permitting Plaintiffs to inject a federal issue in their claims, *supra* pp.6–8.

31.     In accordance with 28 U.S.C. § 1446(d), Defendants will promptly provide written notice of the filing of this Notice of Removal to Plaintiffs and shall file a copy of this Notice along with a Notice of Filing of Notice of Removal with the Clerk of the Supreme Court of New York, Nassau County, where the State Court Actions are currently pending.  *See* Notice of Filing of Notice of Removal, attached hereto as **Exhibit R**.

32.     Defendants remove this action to this Court without waiver of any claims or defenses that may be available to Defendant, all of which are expressly reserved.  Specifically, removal of this case to United States District Court of the Eastern District of New York does not constitute a waiver by Defendants of their right to seek dismissal of this lawsuit.

33.     Co-defendants Nassau County Board of Elections, Joseph J. Kearny, in his official capacity as a commissioner of the Nassau County Board of Elections, and James P. Scheuerman, in his official capacity as a commissioner of the Nassau County Board of Elections, are only nominal defendants in this action, such that Defendants were not required to obtain their consent

to remove this action to the United States District Court of the Eastern District of New York. *See*

*Zerafa v. Montefiore Hosp. Housing Co.*, 403 F. Supp. 2d 320, 328 (S.D.N.Y. 2005); *Snakepit*

*Auto., Inc. v. Superperformance Int'l, LLC*, 489 F. Supp. 2d 196, 201–02 (E.D.N.Y. 2007) ("a

party asserting proper removal may raise an exception to the unanimity rule when . . . the non-

joining defendants are merely nominal or formal parties" (citation omitted)). Indeed, these

nominal defendants have not taken part in the substance of this case, including not submitting any

briefs during the summary judgment proceedings, not appearing at the summary judgment

argument, and then not appearing at trial.

     **WHEREFORE**, Defendants Nassau County and the Nassau County Legislature

respectfully remove this action from the Supreme Court of New York, Nassau County, to the

United States District Court of the Eastern District of New York.

Dated: December 23, 2024
      New York, New York

**TROUTMAN PEPPER HAMILTON
SANDERS LLP**

Bennet J. Moskowitz
875 Third Avenue
New York, NY 10022
(212) 704-6000
bennet.moskowitz@troutman.com

*Attorneys for Defendants Nassau County and
the Nassau County Legislature*

## CERTIFICATE OF SERVICE

I, Bennet J. Moskowitz, hereby certify that on December 23, 2024, I caused a true and

correct copy of the Notice of Removal to be served upon counsel listed below via ECF Filing:

David L. Mejias, Esq.
Mejias Milgrim Alvarado & Lindo, P.C.
1 Dosoris Lane
Glen Cove, NY 11542

Matthew Rozea
Office of the County Attorney
1 West Street
Mineola, NY 11501

Bryan L. Sells
The Law Office of Bryan L. Sells
P.O. Box 5493
Atlanta, GA 31107

Michael M. Freeman
Michael Freeman, Esq.
571 Hunt Lane
Manhasset, NY 11030

Bennet J. Moskowitz