UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NEW YORK COMMUNITIES FOR
CHANGE, MARIA JORDAN AWALOM,
MONICA DIAZ, LISA ORTIZ, and
GUILLERMO VANETTEN,

    Plaintiffs,

v.

COUNTY OF NASSAU, THE NASSAU COUNTY
LEGISLATURE, THE NASSAU COUNTY
BOARD OF ELECTIONS, BRUCE BLAKEMAN,
in his official capacity as Nassau County Executive,
MICHAEL C. PULITZER, in his official capacity
as Clerk of the Nassau County Legislature,
HOWARD J. KOPEL, in his capacity as Presiding Officer
of the Nassau County Legislature, and
JOSEPH J. KEARNEY and JAMES P.
SCHEUERMAN, in their official capacity as
commissioners of the Nassau County Board of Elections,

    Defendants.
------------------------------------------------------------------------X
HAZEL COADS, STEPHANIE M. CHASE, MARVIN
AMAZAN, SUSAN E. COOLS, SUZANNE A. FREIER,
CARL R. GERRATO, ESTHER HERNANDEZKRAMER,
JOHN HEWLETT JARVIS, SANJEEV
KUMAN JINDAL, HERMOINE MIMI PIERRE
JOHNSON, NEERAJ KUMAR, KAREN M.
MONTALBANO, EILEEN M. NAPOLITANO, OLENA
NICKS, DEBORAH M. PASTERNAK, CARMEN J.
PINEYRO, DANNY S. QIAO, LAURIE SCOTT, RAJA
KANWAR SINGH, AMILVIRANI, MARY G.
VOLOSEVICH, and THE NASSAU COUNTY
DEMOCRATIC COMMITTEE,

    Plaintiffs,

For Electronic Publication Only

**MEMORANDUM & ORDER**
24-cv-8779 (JMA) (LGD)
24-cv-08780 (JMA) (LGD)

**FILED**
**CLERK**

1:39 pm, Dec 31, 2024

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

v.

NASSAU COUNTY, THE NASSAU
COUNTY LEGISLATURE, THE NASSAU COUNTY
BOARD OF ELECTIONS, BRUCE BLAKEMAN, in his
official capacity as Nassau County Executive, MICHAEL
C. PULITZER, in his official capacity as Clerk of the
Nassau County Legislature, HOWARD J. KOPEL, in his
capacity as Presiding Officer of the Nassau County
Legislature, and JOSEPH J. KEARNEY and JAMES P.
SCHEUERMAN, in their official capacity as
commissioners of the Nassau County Board of Elections,

    Defendants.

-------------------------------------------------------------------------X

**AZRACK, United States District Judge:**

On December 23, 2024—in the middle of a trial in state court—Defendants removed these two consolidated voting rights actions to federal court. On December 26, 2024, Plaintiffs filed a motion seeking an expedited remand of these actions back to state court. On December 29, 2024, Nassau County and related defendants ("Defendants") filed their opposition briefs to the motion to remand. For the reasons set forth below, Plaintiffs' remand motion is GRANTED.

**A. Background**

The Court assumes familiarity with the procedural history of these cases.

In July 2023, Hazel Coads and other plaintiffs filed an action in state court (the "Coads Action") alleging that the redistricting map adopted by the Nassau County Legislature on February 28, 2023 constitutes an unlawful partisan gerrymander in violation of Section 34 of the New York Municipal Home Rule Law ("MHRL").

In February 2024, New York Communities for Change and other plaintiffs filed an action in state court (the "NYCC Action") alleging that this redistricting map diluted the voting strength of Black, Latino, and Asian Communities in violation of both Section 34(4)(b) of the MHRL as well as the John R. Lewis Voting Rights Act of New York (the "NYVRA"), N.Y. Election Law §

2

17-206(2)(b)(ii). The NYCC Action also alleged—similar to the Coads Action—that the restricting map violated the MHRL's separate prohibition on partisan gerrymandering.

These two actions were transferred to the Honorable Paul I. Marx, J.S.C., who consolidated the actions for discovery and trial on an expedited schedule.

The two New York statutes at issue in these cases are of recent vintage. In 2021, the New York Legislature added Section 34(4) to the MHRL. This amendment added, among other provisions, Section 34(4)(b), which states that:

> Districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minority groups to participate in the political process or to diminish their ability to elect representatives of their choice[.]

MHRL § 34(4)(b).

In 2022, the New York Legislature enacted the NYVRA, which contains more detailed provisions prohibiting "voter suppression" and "vote dilution." N.Y. Election Law § 17-206.

In contrast to these recently enacted New York state voting laws, the federal Voting Rights Act of 1965 (the "FVRA") is a long-standing statute with provisions covering vote dilution claims, 52 U.S.C. § 10301, that have been interpreted by the Supreme Court and the Second Circuit. In Thornburg v. Gingles, 478 U.S. 30, 34–35 (1986), the Supreme Court interpreted 1982 amendments to the FVRA and set out the general framework for analyzing vote dilution claims under Section 2 of the FVRA. The Gingles framework includes three preconditions as well as a totality of the circumstances test that courts consider if the preconditions have been satisfied. See Allen v. Milligan, 599 U.S. 1 (2023).

Various filings in this litigation, including motion practice before Justice Marx, Defendants' Notices of Removal, and the parties briefing on the remand motion address the potential interaction between Section 2 of the FVRA and New York's recently enacted voting rights laws.

3

In October 2024, Defendants filed a motion for summary judgment in these consolidated actions. (Defs' Summ. J. Mem., ECF No. 20-18.) Defendants' summary judgment motion focused on the MHRL partisan gerrymandering claim in the Coads Action and the NYVRA claim in the NYCC Action. Defendants argued, inter alia, that the NYVRA is unconstitutional because it differs from the Gingles framework for assessing vote dilution claims under the Section 2 of the FVRA.

Plaintiffs filed their opposition to the motion on November 12, 2024. In their opposition brief, Plaintiff stressed that Defendants had not moved for summary judgment on Plaintiffs' MHRL vote dilution and race discrimination claims and that the MHRL's prohibitions "on racial vote dilution and intentional racial discrimination . . . are *at least* co-extensive with Section 2 of the [FVRA]." (Pls.' Summ. J. Mem. at 1, ECF No. 1-16 (emphasis in original).)

With respect to their NYVRA claim, Plaintiffs' opposition brief argued that the NYVRA was constitutional and "closely resembles" the FVRA although, according to Plaintiffs, the text of the NYRA did not have to "follow [the Gingles] preconditions in every exact detail to be constitutional." (Id. at 22.) Plaintiffs also argued that their evidence was sufficient to satisfy the Gingles preconditions even if the NYVRA had to be read as "coextensive with" Section 2 of the FVRA. (Id. at 26.)

Defendants' reply brief again focused on the partisan gerrymandering and the NYVRA claims. Defendants asserted, inter alia, that Plaintiffs should not be permitted to rely, at summary judgment, on an allegedly "new Gingles-based theory" for their FVRA claim. (Defs. Summ. J. Reply at 11, ECF No, 1-17.) Defendants also asserted, in a passing footnote (and without any discussion of the statutory text) that Plaintiffs' MHRL § 34(4)(b) claim is "duplicative" of Plaintiffs' NYVRA claim. (Id. at 5 n.1.)

4

On December 6, 2024, Justice Marx denied Defendants' summary judgment motion. In his summary judgment ruling, Justice Marx held that the "fact that NYVRA does not require all three Gingles factors does not render the [NYVRA] unconstitutional or invalid." (Summ. J. Order at 22, ECF No. 1-9.) In analyzing Plaintiffs' NYRA claim, Justice Marx declined to "consider whether all three Gingles preconditions have been met by Plaintiffs because there is no authority for superimposing any of the [Gingles] preconditions that are not already written into the [NYVRA]." (Id. at 23.)

The cases then proceeded to trial, which began on December 17, 2024. During a colloquy with Judge Marx on the first day of trial, Plaintiffs' counsel in the NYCC Action asserted that they "could prove a violation of the Municipal Home Rule Law by proving that the standards for racial vote dilution that are incorporated into the Municipal Home Rule Law are met and those standards are the standards of Section 2 of the [FVRA] as well as the New York Voting Rights Act." (Dec. 17, 2024 Tr. 119 (emphasis added).) Defendants contend that this statement (and other similar statements by Plaintiffs' counsel at trial)[1] along with Judge Marx's subsequent rulings affirming that Plaintiffs could pursue this theory at trial "inject[ed] a very significant federal issue into this case," (ECF No. 1 at 3), which renders the State Court Actions removable under Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). According to Defendants, Plaintiffs are attempting to establish a violation of MHRL § 34(4)(b) by establishing an underlying violation of Section 2 of the FVRA, which raises issues of federal law.

In moving to remand this action, Plaintiffs assert that Defendants' Notices of Removal are untimely and that, in any event, federal question jurisdiction does not exist here under Grable. The Court agrees with Plaintiffs that the Notices of Removal are untimely. Accordingly, it is

---

[1] See Dec. 17, 2024 Tr. 41–42 ("[A]s you know, [Plaintiff's] racial vote dilution claim is based on New York's Municipal Home Rule Law which incorporates the standard of both the Federal Voting Rights Act and New York Voting Rights Act."); Dec. 20, 2024 Tr. 682 (asserting that Plaintiffs could establish a MHRL violation in "any number of ways including ways that would be similar to the standards of proof applicable under Section 2 [of the FVRA].").

5

unnecessary to decide whether federal question jurisdiction exists under Grable or to address Plaintiffs' alternative argument that all properly joined and necessary defendants failed to consent to removal.

However, before addressing the parties' arguments concerning timeliness, the Court will first set out the relevant law underlying Defendants' position that Plaintiffs' "federal theory" for their MHRL § 34(4)(b) claim gives rise to federal question jurisdiction. The relevant law on this issue provides some relevant context for the parties' arguments concerning the timeliness of the Notices of Removal.

**B. Federal Question Jurisdiction and the Grable Exception**

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The removing party bears the burden of establishing the propriety of removal. Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004).

The question of whether a case "arises under" federal law for purposes of 28 U.S.C. § 1331 is governed by the well-pleaded complaint rule. State by Tong, 83 F.4th at 132 (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)). Under that rule, federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint" and cannot be triggered "on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Id. (cleaned up; quoting Caterpillar, 482 U.S. at 393). "In other words, the 'general rule' is that federal courts lack federal-question jurisdiction 'if the complaint does not affirmatively allege a federal claim.'" Id. (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003)).

There are "exactly three situations" in which a complaint that does not allege a federal claim may still arise under federal law for purposes of federal subject matter jurisdiction. Id. at

6

133. They are: "(1) if Congress expressly provides, by statute, for removal of state-law claims; (2) if the state-law claims are completely preempted by federal law; and (3) in certain cases if the vindication of a state-law right necessarily turns on a question of federal law." Id. (cleaned up; quoting Fracasse v. People's United Bank, 747 F.3d 141, 144 (2d Cir. 2014)).

Defendants insist that the Court has federal-question jurisdiction over Plaintiffs' MHRL cause of action based on the third exception, as articulated in Grable, 545 U.S. 312 and its progeny.

The so-called Grable exception provides that a claim arises under federal law for purposes of the well-pleaded complaint rule when the state-law claim implicates significant federal issues. Grable, 545 U.S. at 312. This exception applies in only a "slim category" of cases. Gunn v. Minton, 568 U.S. 251, 258 (2013). Grable jurisdiction exists if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance." Fracasse, 747 F.3d at 144 (citing Gunn, 568 U.S. at 258).

Defendants attempt to invoke Grable's narrow category of jurisdiction by arguing that federal law is necessarily implicated because Plaintiffs assert that they can establish a violation of MHRL § 34(4)(b) by showing that Defendants violated Section 2 of the FVRA. Plaintiffs contend that Grable does not apply because their MHRL claim does not "necessarily raise" federal issues.[2]

---

[2] For a federal issue to be "necessarily raised," the "mere presence of a federal issue in a state cause of action" is inadequate; the question of federal law must be "a necessary element of one of the well-pleaded state claims." State by Tong, 83 F.4th at 140 (cleaned up). "[I]f a 'court could . . . resolve[ ] the case without reaching the federal issues,' then 'the claims do not necessarily raise a federal issue.'" Id. (quoting New York v. Shinnecock Indian Nation, 686 F.3d 133, 140–41 (2d Cir. 2012). The federal law issue must "must be essential to the entire claim, not just to one of multiple alternative theories." VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc., No. 18-CV-10758, 2019 WL 4805771, at *4 (S.D.N.Y. Sept. 30, 2019) (emphasis in original); see Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 810 ("[A] claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories."); Arnowitz v. City of Clifton, No. 20-CV-275, 2021 WL 2577072, at *4 (D.N.J. Mar. 10, 2021) (report and recommendation), adopted, 2021 WL 2577070 (D.N.J. Apr. 5, 2021) ("[A]s plaintiff's state law retaliation claim is premised on two theories (military service and complaints about harassment), only one of which potentially implicates [the federal] USERRA [statute], federal law is not 'necessarily raised . . . .'").

7

**C. Defendants' Notices of Removal are Untimely**

A defendant seeking to remove a civil action from state court must file a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). However, "if the case stated by the initial pleading is not removable," the 30-day clock does not begin to run until the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Id. § 1446(b)(3).

Defendants assert that their Notices of Removal are timely because, according to Defendants, they could not ascertain that these cases were removable under Grable until Justice Marx's December 17 and December 20 rulings "first introduced [Plaintiffs'] federal theory . . . into this case." (ECF No. 18 at 18.) This argument fails because Plaintiffs identified this "federal theory" on November 12, 2024, when Plaintiffs explicitly addressed this theory in their opposition to Defendants' summary judgment motion.[3]

In opposing summary judgment, Plaintiffs stressed, on the first page of their brief, that the MHRL's prohibitions "on racial vote dilution and intentional racial discrimination . . . are *at least* co-extensive with Section 2 of the [FVRA]." (Pls.' Summ. J. Mem. at 1, ECF No. 1-16 (emphasis in original).) Plaintiff's brief also stressed that Defendants did not move for summary judgment on the MHRL claims brought by the NYCC Plaintiffs. (Id.) It was clear, from the first page of Plaintiffs' opposition brief, that Plaintiffs were alleging that they could prove their vote dilution claim under the MHRL by establishing an underlying violation of Section 2 of the FVRA.

---

[3] Plaintiffs assert that, based on Defendants' proffered theory of federal question jurisdiction, Defendants had ample grounds to "ascertain" that this case was removable before November 12. Given the Court's discussion infra, the Court does not need to reach those arguments.

Plaintiffs filed this opposition to Defendants' summary judgment motion—which qualifies as an "other paper" under § 1446(b)(3)—more than forty days before Defendants filed their Notice of Removal.[4]

Defendants insist that, as a matter of New York civil procedure, Plaintiffs' "federal theory" constituted a "new theory" that Plaintiffs could not raise for the first time on summary judgment. As such, Defendants maintain that this allegedly "new theory" did not actually become part of the case until Justice Marx explicitly stated on December 17 and December 20 that Plaintiffs could pursue this "federal theory" at trial. Defendants maintain that, at the very least, it was not sufficiently clear and certain that Plaintiff's "federal theory" was part of the case on November 12. According to Defendants, Plaintiffs' reference to this "federal theory" in their opposition brief was akin to a plaintiff filing—without first obtaining the requisite leave of court—an amended complaint in state court that introduces a federal claim or issue for the first time. Defendants reason that, in such circumstances, the 30-day removal clock would not begin until the state court grants the plaintiff permission to file the proposed amended complaint that includes the newly raised federal issue.

The Court is not persuaded by Defendants' arguments. Plaintiffs' opposition brief clearly set out this "federal theory" for their MHRL claim vote dilution claim. This was not, as Defendants suggest, a "new theory" for Plaintiffs' MHRL claim that was improperly advanced at summary judgment.

MHRL § 34(4)(b), which was enacted in 2021, before the NYVRA, contains the following language:

> Districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minority groups to participate in the political process or to diminish their ability to elect representatives of their choice.

---

[4] Defendants do not dispute that this filing qualifies as "other paper" under § 1446(b)(3).

It is not surprising that, in an effort to establish a claim under MHRL § 34(4)(b), Plaintiffs might look to whether the standards of Section 2 of the FVRA were violated. While they are not identical, MHRL § 34(4)(b) and the Section 2 of the FVRA contain some similar language. See 52 U.S.C. § 10301.

This one potential interpretation of MHRL § 34(4)(b) proffered by Plaintiffs is not a "new theory" and—unlike the filing of a proposed amended complaint that may require leave of court before the proposed amended pleading becomes operative—Plaintiffs did not need explicit permission from Justice Marx before they could pursue this argument at trial. Plaintiffs' complaint in the NYCC Action did not preclude them from asserting this interpretation (or other alternative interpretations) of MHRL § 34(4)(b) at summary judgment.

The Notices of Removal—which are premised on Defendants' claim that Plaintiffs' "federal theory" establishes federal question jurisdiction under Grable—are untimely. Defendants' contention that it was not sufficiently clear and certain that the interpretation of MHRL § 34(4)(b) set out on the first page of Plaintiffs' opposition brief was actually part of the case is meritless.

Relatedly, Defendants erroneously assert that Justice Marx's December 6, 2024, summary judgment ruling confirmed that there "was no federal issue in this case at summary judgment." (ECF No. 18 at 20.) Notably, the portion of Justice Marx's decision Defendants cite only addressed Plaintiff's independent NYVRA claim, not MHRL § 34(4)(b). Nothing in Justice Marx's ruling indicated that Plaintiffs' "federal theory" for their MHRL § 34(4)(b) claim was not part of the case as of November 12, 2024.

In conclusion, Defendants needed to remove these cases within 30 days of November 12, 2024. As Defendants failed to do so, Plaintiffs' motion to remand must be granted.

10

### D. Plaintiffs' Request for Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

Defendants' arguments that the Notices of Removal were timely come close to the line of being objectively unreasonable. However, given the complicated legal issues before Justice Marx and the expedited nature of the proceedings in state court, the Court concludes that Defendants' position on timeliness was not objectively unreasonable under the circumstances. Accordingly, the Court declines to award Plaintiffs attorney's fees.

### E. Conclusion

For the reasons set out above, Plaintiff's Motion to Remand is GRANTED. Accordingly, the Court remands these two actions back to the Supreme Court of the State of New York, Nassau County.

The Clerk of the Court is directed to: (1) mail certified copies of this order to the clerk of the Supreme Court of the State of New York, Nassau County, pursuant to 42 U.S.C. § 1447(c); and (2) to close these cases.

**SO ORDERED.**

Dated:   December 31, 2024
        Central Islip, New York

                                            /s/ (JMA)
                                          JOAN M. AZRACK
                                          UNITED STATES DISTRICT JUDGE